1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   DON AGUILAR, et al.,                    Case No.  13-cv-00563-WHO

                   Plaintiffs,
12
                                             **ORDER GRANTING IN PART AND**
13         v.                                **DENYING IN PART PLAINTIFF**
                                             **MANNION'S MOTION FOR PARTIAL**
14   ZEP INC., et al.,                       **SUMMARY JUDGMENT FOR**
                                             **LIABILITY FOR VIOLATION OF**
                   Defendants.               **LABOR CODE § 2802**
15

16                                           Re: Dkt. Nos. 91, 99, 100

17

18                          **INTRODUCTION**

19         Plaintiff Dan Mannion has moved for partial summary judgment on defendant Zep Inc.'s

20   liability for failing to reimburse him for reasonable business expenses between 2006 and 2011, in

21   violation of California Labor Code Section 2802.[1]  For the reasons stated below, the Court

22   GRANTS IN PART and DENIES IN PART Mannion's motion for partial summary judgment.

23                          **BACKGROUND**

24         Mannion has been employed by Zep as an outside sales representative since February

25   1989.  Dkt. No. 91-16 ("Mannion Decl.") ¶ 2; Dkt. No. 95-1 ("Mannion Depo."), 37:14-20.  In

26   February 1989, Mannion entered into a Sales Representative's Exclusive Account Contract with

27   _____

28   [1] Mannion is not moving for summary judgment as to his damages for Zep's alleged violation of
     Section 2802, just Zep's liability.

United States District Court
Northern District of California

Zep. Dkt. No. 91-17 (Mannion Decl. Ex. A, the "Sales Representative Contract"). The Sales

Representative Contract provides that:

> [Mannion] agrees that all expenses incurred by [Mannion] in connection with employment hereunder, including but not limited to, expenses of travel, entertainment, and solicitation, and other sales expenses, shall be paid by [Mannion] and shall not be reimbursed by [Zep].

*Id*. ¶ 4(d).

Mannion's role as an outside sales representative requires him to develop new business, which entails making sales calls and driving to those calls "to generate and maintain customer business." Mannion Decl. ¶ 7. As a result, Mannion incurs automobile insurance, gas and maintenance expenses. *Id*. ¶¶ 5-7. Mannion also incurs cell phone and computer expenses for communicating with potential clients and Zep management on the road and placing orders and accessing Zep information online. *Id*.

Mannion claims that his business-related expenses "far exceeded" $500 per month. *Id*. ¶ 17. He has submitted what he refers to as a "schedule of the actual and necessary expenses" incurred in performing his duties from December 2006 to June 2011. Dkt. No. 91-18. The schedule claims approximately $15,000 to $20,000 in expenses per year, consisting of $12,000 to $18,000 per year in mileage expenses, and other smaller expenses attributed to "internet," "Sprint," "Timewise" and other expenses. *Id*. Mannion claims a total of $74,889.51 in expenses from December 2006 through June 2011. *Id*.

Mannion has paid for his business expenses directly with his own funds. Mannion Decl. ¶ 13. Zep has not required Mannion to submit proof of his various business related expenses and Mannion has not been advised by Zep that he was being reimbursed for business expenses. *Id*. ¶¶ 12, 19. Zep did not have a written reimbursement policy that applied to Mannion between December 2006 and June 2011. Dkt. No. 97-2 ("Grossman Depo. II"), 37:14-21. Mannion's payments from Zep are in the form of payroll checks. Mannion Decl. ¶ 19, Ex. C. There is no indication on the checks that a portion of Mannion's payments are reimbursements for business expenses. *Id*.

On occasion, sales representatives have requested that Zep confirm to third parties, such as the IRS, that Zep does not reimburse its sales representatives for business expenses, such as automobile and telephone expenses.  For example, a 2009 letter from Zep to the IRS stated that

> This letter serves as notification that Thomas Fowler, a Zep Sales Representative, is fully responsible for all expenses connected with the performance of his job duties including car expense, motels, entertainment, gifts, etc.

> Mr. Fowler drives his own vehicle in the performance of his job responsibilities and is not reimbursed for maintenance, gasoline, repairs, etc., connected with the operation of this vehicle.  Zep does not reimburse sales representatives for any expenses.

Dkt. No. 93-2.

At his deposition, Zep's corporate designee, director of sales, Mark Grossman, testified that Zep's "commission structure is elevated over and above what normal commissions are for a lot of our competitors which allows you to be able to pay some of your expenses or all your expenses." Dkt. No. 95-2 ("Grossman Depo. I") at 79:18-21.  He testified that "[a]pproximately 10 percent" of Mannion's "earnings are to cover his day-to-day expenses."  *Id.* at 83:18-22.

In contrast, Mannion has filed a declaration stating he was never told by anyone at Zep that part of his commission was "intended to cover expenses or that part of [his] commissions were intended to reimburse [him] for business-related expenses."  Mannion Decl. ¶ 6.  On the contrary, from his review of the Sales Representative Contract and from his discussions with Zep management at the time of his hire and various times since then, Mannion understood that he would be fully responsible for paying all expenses associated with performing his duties "and that [he] would not be reimbursed at all by the company."  *Id.*  ¶ 11.

Mannion has at times received a draw (or advance) against his commission.  Mannion Depo. at 38:24-39:1.  Zep's corporate designee testified that these draws were part of the elevated commission structure, and, as such, were intended to cover Mannion's expenses.  Grossman Depo. I at 98:11-14 ("It was a draw against future commissions earned, and those commissions, as we discussed, because of the commission structure, yes, he would pay his own day-to-day expenses.").  In contrast, according to Mannion, no one ever informed him that the draws were

1    intended to reimburse him for his expenses.  Dkt. No. 97-12 ¶¶ 6, 13-14.

2         Zep twice paid for airfare and hotel costs associated with Mannion attending industry trade

3    shows in Las Vegas.[2]  Mannion Depo. at 47:18-48:6.

4         At some point during Mannion's employment, Zep implemented an electronic/phone order

5    program "designed to incentivize representatives to place their orders electronically as opposed to

6    over the phone."  Dkt. No. 95-3 ("Henson Decl.") ¶ 15.  As part of this program, sales

7    representatives were charged $10 for orders they placed by phone, as opposed to those placed over

8    the internet.  Dkt. No. 95-4 ("Stadler Decl.) ¶ 14; Mannion Decl. ¶¶ 6-7.  "Zep allocated $50 per

9    month for each sales representative to reimburse representatives for some or all of the phone

10   orders they placed and were charged for that month."  Stadler Decl. ¶ 14.  At his deposition,

11   Mannion testified that these credits "were a spiff[3] to encourage guys to use the electronic system

12   as opposed to phone in and faxing."  Mannion Depo. at 100:22-101:8.  Neither side has provided

13   evidence indicating how much money Mannion was allocated under this program.  Mannion

14   testified that "[i]t was something that appeared sometimes and didn't appear . . . ."  Mannion

15   Depo. at 101:18-19.

16        In June 2011, Zep terminated the Sales Representative Contract and adopted a new

17   compensation policy that apportioned 10% of sales representatives' commission to cover their

18   expenses.  Mannion Decl. ¶¶ 10, 18, 20; Dkt. No. 97-8 (Supp. Answer to Special Interrogatory No.

19   142).

20                              **LEGAL STANDARD**

21        Summary judgment is proper "if the movant shows that there is no genuine dispute as to

22

23   [2] Mannion argues that Zep paid for these costs up front, so they do not constitute reimbursements.
     In his deposition, he used the term "reimbursement," (Mannion Depo. at 47:18-48:6), but
24   Grossman testified: "I don't even know, honestly, if it was in a reimbursement. I think we would
     have bought him a plane ticket or make arrangements for him to have the hotel room, and we
25   would cover his meals while he was with us."  Grossman Depo. II at 61:25-62:3.
     [3] The parties have not defined the term "spiff" for the Court, which must resort, to its chagrin, to
26   using Wikipedia as a source.  "A spiff or spiv is an immediate bonus for a sale. Typically, 'spiffs'
     are paid, either by a manufacturer or employer, directly to a salesperson for selling a specific
27   product. Originally comes from 'Special Performance Incentive Fund.'"
     en.wikipedia.org/wiki/Spiff
28

United States District Court
Northern District of California

1    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

2    The moving party bears the initial burden of demonstrating the absence of a genuine issue of

3    material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has

4    no burden to disprove matters on which the non-moving party will have the burden of proof at

5    trial. The moving party need only demonstrate to the court "that there is an absence of evidence to

6    support the nonmoving party's case." *Id.* at 325.

7          Once the moving party has met its burden, the burden shifts to the non-moving party to

8    "designate specific facts showing a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

9    To carry this burden, the non-moving party must "do more than simply show that there is some

10   metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

11   475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient;

12   there must be evidence on which the jury could reasonably find for the [non-moving party]."

13   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

14         In deciding a summary judgment motion, the court must view the evidence in the light

15   most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

16   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

17   inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for

18   summary judgment." *Id.* However, conclusory or speculative testimony in affidavits is

19   insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g*

20   *Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

21                                      **DISCUSSION**

22   California Labor Code Section 2802(a) provides that

23           An employer shall indemnify his or her employee for all necessary
             expenditures or losses incurred by the employee in direct
24           consequence of the discharge of his or her duties, or of his or her
             obedience to the directions of the employer, even though unlawful,
25           unless the employee, at the time of obeying the directions, believed
             them to be unlawful.[4]
26

27

28   _____

[4] Section 2804 provides that the right to reimbursement under Section 2802 cannot be waived.

5

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Cal. Lab. Code § 2802(a).  "Necessary expenditures or losses" include all "reasonable costs."  Cal. Lab. Code. § 2802(c).  "To demonstrate that an employer has violated Section 2802, a plaintiff must show that: (1) he or she is an employee; (2) he or she incurred necessary expenses either in the discharge of his or her duties or in obeying the employer's directions; and (3) the employer failed to reimburse the plaintiff for such expenses."  *Desimone v. Allstate Ins. Co.*, 96-cv-03606 CW, 1999 WL 33226248, *7 (N.D. Cal. Sept. 14, 1999); *Gattuso v. Harte–Hanks Shoppers, Inc.*, 169 P.3d 889, 897 (Cal. 2007).  In addition, the employer "must either know or have reason to know that the employee has incurred [the] expense." *Marr v. Bank of Am.*, 09-cv-05978 WHA, 2011 WL 845914, *1 (N.D. Cal. Mar. 8, 2011) *aff'd sub nom. Marr v. Bank of Am., NA*, 506 F. App'x 661 (9th Cir. 2013).

Mannion is moving for summary judgment as to Zep's liability only.  To establish liability, Mannion "need not introduce evidence of every expenditure; rather, [he] must submit evidence that [he] incurred expenses in each of the categories of necessary expenses for which [he] seek[s] to recover." *Desimone*, 1999 WL 33226248, *7.  If he succeeds in demonstrating that he incurred necessary expenses, he will be required to present evidence regarding the extent of such expenditures at the damages phase of the action.  *Id.*

Zep argues that Mannion has not presented sufficient evidence i) that Mannion has incurred expenses, ii) that his expenses were incurred as a direct consequence of the discharge of his duties, iii) that his expenses were reasonable and necessary, or iv) that he has been inadequately reimbursed.[5]  The Court addresses each argument in turn.  As explained below, there is no genuine dispute that Mannion incurred at least *some* amount of reasonable and necessary automobile expenses as a direct consequence of his employment.  The real issue is whether Zep can create a material issue of fact as to whether it paid an elevated commission rate to Mannion,

---

[5] Zep also argues that Mannion cannot rely on communications from Zep to other sales representatives or on the Sales Representative Contract to establish that Zep did not reimburse Mannion.  Zep is correct that those materials do not conclusively establish that Zep did not reimburse Mannion.  Those materials do, however, confirm that at least some amount of business expenses were reasonable and necessary as a direct consequence of Mannion's employment, which Zep has not controverted.

1    because if it did, there would be a question whether Mannion had been reimbursed.  Because it is

2    undisputed that Zep never conveyed to Mannion that he was receiving an elevated commission,

3    Zep cannot make such a showing.  *See Gattuso*,  169 P.3d at 901.

4            **A.  Mannion incurred business expenses.**

5            Mannion claims that his business expenses include "auto expenses (gasoline, registration,

6    insurance, maintenance, etc.), cell phone, computer, internet, customer entertainment, etc."

7    Mannion Decl. ¶ 13; *see also id.* ¶ 7.  Mannion submitted a "schedule of the actual and necessary

8    expenses" which lists purported expenses for "miles," "internet," "Sprint," "Timewise,"

9    "McAfee," "Dell," "BestBuy," and other expenses.  Dkt. No. 91-18 at 3.  Mannion claims that he

10   incurred $74,889.51 in expenses from December 2006 through June 2011.  *Id.*

11           Zep argues that Mannion has not shown that he has incurred expenses because he "has

12   offered the Court no basis by which to examine the qualitative and quantitative nature of the

13   alleged expenses, the amounts of the individual expenses, or how to allocate those expenses

14   between Zep and non-Zep use."  Dkt. No. 94 at 18.  At oral argument, counsel for Zep restated this

15   argument: if Mannion did not incur business expenses beyond the personal expenses which he

16   incurred irrespective of his employment, then he did not incur any business expenses and there can

17   be no liability under Section 2802.  In other words, according to Zep, if Mannion spent $100 a

18   month for his personal cell phone and internet use, and the use of his cell phone and internet for

19   Zep-related activities did not result in additional expenses, then Mannion did not incur any

20   business expenses from his cell phone and internet use.

21           Because it is undisputed that Mannion incurred automobile-related business expenses that

22   were not reimbursed (other than through the so-called "elevated commission" structure, addressed

23   in section D, below), the Court need not reach whether Section 2802 requires an employer to

24   reimburse an employee for necessary business expenses which are wholly subsumed within the

25   employee's personal expenses.  In his sworn declaration, Mannion stated that when he was hired

26   by Zep, he was told that his duties as an outside sales representative would require him to have an

27   automobile and, at his expense, maintain business-use automobile insurance on all vehicles he

28   used in connection with his employment.  Mannion Decl. ¶ 5.  Mannion further stated that during

United States District Court
Northern District of California

7

his employment with Zep, he was "instructed to make sales calls and to develop new business, requiring [him] to drive to and from those calls." *Id.* ¶ 7. He stated that he paid for his own business related automobile expenses, including gasoline, registration, insurance and maintenance. *Id.* ¶ 13. Mannion claims that he drove approximately 25,000 to 35,000 miles per year between 2007 and June 2011 in the discharge of his duties. *Id.* ¶ 17, Ex. B. Zep's corporate designee concedes that Mannion's position as an outside sales representative could reasonably require him to drive "far greater" than 100 miles per month (Grossman Depo. II at 201:18-202:8), for which Mannion would necessarily have incurred automobile expenses unrelated to the personal use of his automobile. While Zep takes issue with the amount of business expenses claimed by Mannion, it does not dispute that Mannion's employment required him to maintain an automobile and incur associated expenses.

There is no argument that Mannion's business-related automobile expenses were fully subsumed within his personal automobile expenses. The Sales Representative Contract between Zep and Mannion states that "all expenses incurred by [Mannion] in connection with employment hereunder, including but not limited to, expenses of travel, entertainment, and solicitation, and other sales expenses, shall be paid by [Mannion]." Sales Representative Contract ¶ 4(d). Zep's corporate designee testified that approximately 10% of Mannion's earnings are intended to "cover his day-to-day expenses," conceding that Mannion incurs substantial business expenses beyond his personal expenses. Grossman Depo. I at 81:15-18; 83:14-19. The Court accordingly finds that Mannion has adequately established that he incurred automobile business expenses. The "qualitative and quantitative nature" of those expenses relates to the reasonableness and necessity of those expenses and, ultimately, to the scope of Zep's liability; not whether the expenses were incurred in the first instance.[6]

---

[6] As noted below, because the Court finds that Mannion has not presented sufficient evidence that his other alleged expenses exceeded his reimbursements from Zep or were reasonable and necessary, the Court does not address whether Mannion adequately demonstrated that he incurred such expenses in the first instance.

United States District Court
Northern District of California

**B.   Mannion's expenses were a direct consequence of the discharge of his duties.**

Zep argues that there is a genuine question of fact as to whether Mannion incurred the alleged expenses as a direct consequence of the discharge of his duties because he has "admitted that the vehicles, phone and internet connection that he allegedly used for business purposes were also used for personal purposes." Dkt. No. 94 at 21.  For the reasons stated above, Mannion has sufficiently shown that at least some amount of his automobile expenses were incurred as a direct consequence of the discharge of his duties.  The precise portion of those expenses which were incurred as a direct consequence of his duties will be addressed in the damages phase of this action.

**C.   Mannion's expenses were reasonable and necessary.**

"Whether a business expense incurred is 'necessary' for purposes of applying Cal. Labor Code § 2802 'is ordinarily a question of fact, but the issue may be determined as a question of law when the material facts are undisputed and no conflicting inferences are possible.'" *Takacs v. A.G. Edwards & Sons, Inc.,* 444 F.Supp.2d 1100, 1124-25 (S.D. Cal. 2006) (quoting *Jacobus v. Krambo Corp.,* 78 Cal.App.4th 1096, 1103, 93 Cal.Rptr.2d 425 (2000)).  Zep argues that since Mannion "admitted using his vehicle for both personal and business purposes, the portion of miles used for personal purposes would clearly be unreasonable and unnecessary." Dkt. No. 94 at 23. While that is true, it is also true that at least some portion of miles used for business purposes would be reasonable and necessary.

It is uncontroverted that Mannion's job required him to use his personal automobile. Accordingly, as with Zep's argument regarding whether each expense was incurred as a direct result of his employment, whether the expenses were reasonable and necessary relates largely to Mannion's damages.  It is sufficient that there is no genuine dispute that Mannion incurred some level of reasonable and necessary expenses.  Zep will have an opportunity to challenge the reasonableness and necessity of Mannion's expenses during the damages phase of this action.

**D.   Mannion has not been adequately reimbursed.**

Zep argues that there are "disputed issues of material fact as to whether [Mannion's] expenses exceeded the various reimbursements he received from Zep in the form of Zep's

9

enhanced compensation structure (the elevated commission rate), monthly draw [part of the commission], electronic credit program, and separate reimbursements."  Dkt. No. 94 at 24-25.  The Court addresses each of the supposed "various reimbursements" below.

Zep has not provided any evidence of the total amount of the "various reimbursements" that Mannion purportedly received; rather, Zep argues that Mannion has not provided sufficient evidence that Mannion's reasonable and necessary business expenses exceed whatever amount of reimbursements he received.  The problem with Zep's argument is that Zep did not reimburse Mannion *at all* for at least one category of Mannion's reasonable and necessary business expenses: his automobile expenses.[7]  Zep argues that Mannion received an "elevated commission" which covered his expenses, presumably including his automobile expenses.[8]  But as explained below, as a matter of law, Zep cannot establish that it utilized an "elevated commission" (and the monthly draws against the commission) under Section 2802 to reimburse Mannion's expenses.

1.  Elevated commission rate and advances against commission

The California Supreme Court has held that an employer may discharge its obligation under Section 2802 "through an increase in base salary or in commission rates."  *Gattuso*, 169 P.3d at 900.  However, to do so, "the employer must provide some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement."  *Id.*  Using that method or formula, the employee "can readily determine whether the employer has discharged all of its legal obligations as to both wages and business expense reimbursement."  *Id.*  As the California Supreme Court explained, the requirement that an

---

[7] To get summary judgment as to Zep's liability, Mannion must establish that his expenses exceed his reimbursements; he does not need to establish that he is entitled to $75,000 at this stage—that is a question for the damages phase.  *See* Desimone, 1999 WL 33226248, *7 ("To establish liability [under Section 2802], however, Plaintiffs need not introduce evidence of every expenditure; rather, they must submit evidence that they incurred expenses in each of the categories of necessary expenses for which they seek to recover.  If Plaintiffs succeed in demonstrating that they incurred necessary expenses, they will be required to present evidence regarding the extent of such expenditures at the damages phase of the action.").

[8] The other purported reimbursements do not relate to automobile expenses.  The electronic credit program relates specifically to Mannion's phone and internet use for placing orders and the only "separate reimbursements" identified by Zep relate to payments for airfare and perhaps lodging for Mannion to attend trade shows in Las Vegas.

United States District Court
Northern District of California

employer "communicate to its employees the method or basis for apportioning any increases in compensation between compensation for labor performed and business expense reimbursement . . . is necessary for effective enforcement of section 2802's reimbursement provisions and, thus, implicit in the statutory scheme. *Id.* at 901.

Zep argues that Mannion "received an elevated commission rate, under which 10% of his commissions were intended to cover his out-of-pocket business related expenses." Dkt. No. 94 at 17. In support, Zep cites the deposition testimony of its corporate designee,[9] who testified that Mannion's "commission structure allowed him to pay expenses." Grossman Depo. I at 79:14. Grossman explained that Zep's "commission structure is elevated over and above what normal commissions are for a lot of our competitors which allows you to be able to pay some of your expenses or all your expenses." *Id.* at 79:18-21. Grossman testified that approximately 10% of Mannion's "earnings are to cover his day-to-day expenses." *Id.* at 83:18-22. Asked whether it was exactly 10%, Grossman responded

> Well, they're within -- I mean, it could be less. It really depends on the earnings and the scenario and how much expense they had, but 10 percent of that earnings would normally more than cover the day-to-day expenses, in my mind.

*Id.* at 140:1-5.

It is insufficient under *Gattuso* that Mannion's commission "allowed" him to cover his business expenses, or that 10% of his commission would "cover" his day-to-day expenses. To satisfy *Gattuso*, an employer must i) provide some method or formula to identify the amount of the commission that is intended to provide expense reimbursement and ii) communicate the method or formula to its employees. 169 P.3d at 900-01. Zep has not done so.

---

[9] Mannion objects to various portions of the deposition testimony of Grossman offered by Zep in support of its opposition to the motion for partial summary judgment. Dkt. No. 99. To the extent that the Court relies on that testimony in this Order, the objections are OVERRULED. Since Grossman testified as Zep's corporate designee under Federal Rule of Civil Procedure 30(b)(6), his lack of personal knowledge is not a basis to exclude his testimony. *See* Fed. R. Civ. P. 30(b)(6). Zep's objections to the portions of Grossman's deposition transcript submitted with Mannion's reply brief are also OVERRULED. Dkt. No. 100. To the extent that that portion of the transcript is cited in this Order, the Court finds that Mannion appropriately responded to arguments raised in Zep's opposition that Mannion could not have anticipated.

Even assuming that Mannion's commission was in fact "elevated" 10% to cover his expenses,[10] it is uncontroverted that no one ever communicated this "method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement" to Mannion. *Id.* at 900. Mannion declared unambiguously that no one at Zep ever told him that part of his commissions "were intended to cover expenses or that part of [his] commissions were intended to reimburse [him] for business-related expenses" and that he "was never given any type of method and/or formula informing [him] what portion, if any, of the payments made to [him] by ZEP were intended as reimbursement for business related expenses incurred in performing [his] duties for ZEP." Mannion Decl. ¶¶ 6, 18. For his part, Grossman testified that he did not know whether anyone at Zep ever told Mannion that 10% of his commission was intended to reimburse him for expenses. Grossman Depo. I at 140:6-10. At oral argument, counsel for Zep confirmed that there is no evidence in the record that anyone at Zep ever told Mannion that 10% of his commission was intended to reimburse him for expenses. Dkt. No. 105 at 2:21-3:9.

Nor was there a written policy during the relevant time stating that any portion of Mannion's commission was allocated for expense reimbursement. Grossman Depo. II at 37:17-21 ("Q: During the period of time December 2006 through June 30th, 2011, to your knowledge, did Zep have a written expense reimbursement policy that would have applied to Dan Mannion? A: Not to -- no, not that I would be aware of."). On the contrary, the Sales Representative Contract governing Mannion's employment with Zep specifically stated that "all expenses incurred by [Mannion] in connection with employment . . . shall be paid by [Mannion] and *shall not be reimbursed by Company*." Sales Representative Contract ¶ 4(d) (emphasis added). Based in part on that contract, Mannion understood that he would be fully responsible for paying all expenses associated with performing his duties for Zep "and that [he] would not be reimbursed at all by the company." Mannion Decl. ¶ 11.

---

[10] Tellingly, Grossman testified that his understanding that Zep paid Mannion an "elevated" commission to cover expenses was not based on any policy or other information from Zep, but "from talking to people in various industries and just asking questions." Grossman Depo. II at 207:20-21.

United States District Court
Northern District of California

At oral argument, counsel for Zep argued that, under *Gattuso*, Zep's failure to communicate the elevated commission structure to Mannion implicates Section 226, which requires employers to provide employees itemized wage statements, but not Section 2802. Counsel argued that:

> [T]he communication issue is one that is perhaps a 226 violation, or issue. But not one under 2802, because the actual inquiry under 2802 should be whether or not reimbursement occurred. And that the requirement or the suggestion that communication take place was a direction from the *Gattuso* court about how to comply with 226.

Dkt. No. 105 at 3:17-22.

The Court disagrees. As noted above, in *Gattuso*, the California Supreme Court concluded that an employer may satisfy Section 2802 through increases in base salary or increases in commission rates, or both. *Gattuso* referred to Section 226, but only to reject the argument that satisfying Section 2802 through increases in base salary or increases in commission rates ran afoul of Section 226's obligation to itemize employee compensation payments. *Gattuso*, 169 P.3d at 901 ("We next consider plaintiffs' argument that providing section 2802 automobile expense reimbursement through enhanced employee compensation, in the form of increases in base salary and/or commission rates, would violate or be inconsistent with an employer's obligation under section 226, subdivision (a), to itemize employee compensation payments."). Counsel is correct that *Gattuso* provides "direction . . . about how to comply with 226": employers that satisfy Section 2802 through increases in commission rates "should, in providing the documentation required by section 226, subdivision (a), separately identify the amounts that represent payment for labor performed and the amounts that represent reimbursement for business expenses." *Id.* at 901 n.6. The requirement in Section 226 that employers separately *identify the amounts* that represent payment and reimbursement is separate from the requirement that an employer communicate to its employees the *method or basis* for apportioning any increases in compensation between compensation for labor and expense reimbursement. Indeed, the court explained that the requirement that an employer communicate the method or basis for apportioning any increases in compensation between labor and expense reimbursement "is necessary for effective enforcement

1    of section 2802's reimbursement provisions and, thus, implicit in the statutory scheme." *Id.*

2          As it is uncontroverted that Zep did not "communicate to [Mannion] the method or basis

3    for apportioning any increases in compensation between compensation for labor performed and

4    business expense reimbursement," Zep's purported "elevated" commission does not satisfy

5    Section 2802.  Given that the "elevated" commission—and the draws against the commission—is

6    the only purported reimbursement related to Mannion's automobile expenses, Mannion has

7    sufficiently established that he was never reimbursed for any automobile expenses during the

8    relevant time period.  The Court thus finds that Mannion's motion for partial summary judgment

9    should be granted as to Zep's liability for failure to reimburse Mannion's automobile expenses

10   under Section 2802.

11                    2.   Electronic Credit Program

12         Mannion concedes that on occasion he received credits from Zep as part of the electronic

13   credit program to incentivize him to place orders online instead of over the phone.  Mannion

14   Depo. at 100:22-101:8.  Mannion also notes that he was docked $10 on several occasions for

15   placing orders over the phone.  Mannion Decl. ¶ 6; Dkt. No. 98 at 16.  Mannion testified that the

16   credit "was something that appeared sometimes," (Mannion Depo. at 101:18-19), but neither side

17   has provided evidence indicating how much money Mannion received under this program.

18         Mannion claims that he incurred approximately $100 in expenses every month in phone

19   and internet expenses.  Dkt. No. 91-18.  However, Mannion admits that he also used the phone

20   and internet for personal purposes.  Mannion Depo. at 7:17-21, 98:1-25.  As a consequence, the

21   Court cannot determine which portion of the $100 was reasonable, necessary and incurred as a

22   direct consequence of Mannion's duties, and there is a question of fact whether his computer and

23   phone expenses exceed any credits received from Zep.  Summary judgment as to Zep's failure to

24   reimburse Mannion's cell phone and internet expenses is not appropriate.

25                    3.   Separate reimbursements

26         Zep argues that Mannion's receipt of various "separate reimbursements," in combination

27   with the other reimbursements mentioned above, creates a disputed issue of material fact as to

28   whether Mannion's expenses exceed his reimbursements.  But the only specific "separate"

United States District Court
Northern District of California

reimbursements that Zep identifies are payments for Mannion's airfare and lodging in connection with his attendance at two industry trade shows in Las Vegas.  Dkt. No. 94 at 9 (citing Mannion Depo. at 47:18-48:6).  As Mannion does not appear to claim that he is owed any expenses from these trips, these "separate reimbursements" are irrelevant to this motion.

**CONCLUSION**

For the reasons stated, the Court GRANTS Mannion's motion for partial summary judgment as to Zep's liability under California Labor Code Section 2802 for failure to reimburse Mannion's business-related automobile expenses only.  The amount of Mannion's damages remains to be determined.  The Court DENIES Mannion's motion for partial summary judgment as to all other categories of Mannion's alleged business expenses because there are material facts in dispute.


**IT IS SO ORDERED**.

Dated: October 10, 2013

_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California