UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON AGUILAR, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ZEP INC., et al.,<br><br>    Defendants. | Case No. 13-cv-00563-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF DAVID OVADIA'S CLAIMS**<br><br>Re: Dkt. No. 112 |

Plaintiff David Ovadia signed a settlement agreement with defendant Zep, Inc., his former employer, that included a complete release of all of his employment-based claims in exchange for payment of $8000. The question I must decide on summary judgment is whether the release is valid in light of California Labor Code sections 206.5 and 2804, which prohibit the settlement of wage and business expense claims under certain circumstances, and whether the settlement agreement was unconscionable. There was a genuine dispute between Ovadia and Zep over the wage issues, allowing them to be settled by agreement, the business expense issues were also susceptible to settlement, and the agreement was not unconscionable. As a result, I will GRANT Zep's motion for summary judgment against Ovadia.

**FACTUAL AND PROCEDURAL BACKGROUND**

Zep is a company that sells janitorial and sanitation supplies. On December 30, 2010, former Zep employees Keith Britto and Justin Cowen filed a putative class action in the Superior Court of California for Alameda County captioned *Britto, et al. v. Zep Inc., et al.*, Case No. VG10553718 ("*Britto*"), alleging that Zep had violated California law by (i) failing to reimburse sales representatives for work-related expenses; and (ii) improperly deducting certain expenses from representatives' wages. Suh Decl., Ex. D. Ovadia, a former sales representative for Zep, was an unnamed putative class member.

Ovadia signed Zep's "Salesman's Exclusive Account Contract" when he was hired. It set forth Ovadia's commission as follows: "[T]he Company will pay the Salesman a commission of 50% of the profit on the sales made by the Salesman after deducting the cost of the merchandise sold plus a sum equal to 10% of the sales price for overhead expenses." Grosman Decl., Ex. A. Ovadia alleges that throughout his employment, Zep made illegal deductions from his wages and unlawfully required him to pay his own business expenses.

During the pendency of the *Britto* action, Zep extended settlement offers to several putative class members. On May 24, 2011, Zep sent a letter to Ovadia offering him $8,000 to settle any potential claims related to the *Britto* action. Grossman Decl., Ex. B. Attached to the letter was a copy of the first amended complaint in the *Britto* action and a Settlement and Release Agreement. *Id.*

The letter summarizes the claims made in the *Britto* action and states that the "settlement offer [] is intended to provide you compensation in return for a release of potential claims related to this lawsuit." *Id.* The letter states that "the Company believes it did not violate any law." *Id.* The letter further states that nevertheless, if "the Company does not prevail in the litigation, you may be entitled to recover money as a result of this lawsuit. At present, there is no set formula or calculation for any potential recovery" but "recovery could potentially include reimbursement for business-related expenses, recovery of any improper deductions, prejudgment interest, civil and/or statutory penalties, as well as attorneys' fees." The letter then offers Ovadia $8,000 "[b]ased on our review of commissions, deductions and the issues raised by the lawsuit . . . ." *Id.*

The letter repeatedly states that employees who decline the settlement offer will not be retaliated against. *See Id.* ("Whether or not you choose to accept this offer will have no impact whatsoever on your future employment with the Company . . . . I want to assure you that we will not tolerate any retaliation against any employee as a result of not accepting this offer or participating in this lawsuit . . . . Absolutely no adverse action will be taken against you no matter what you decide to do.") The letter advises Ovadia to "make a decision for yourself" and provides contact information for Zep's counsel and counsel for the putative class plaintiffs in *Britto*, which are the same attorneys representing Ovadia in this action. The letter requests a response by June

Case 3:13-cv-00563-WHO   Document 139   Filed 05/12/14   Page 3 of 12


24, 2011. *Id.*

Around the same time, Zep was changing its compensation and reimbursement policies. The letter references this policy shift and states, "As you are aware, the Company is modifying its commission policies and agreements to eliminate the risks created by the lawsuit. The offer contained in this letter and your decision to accept or reject this offer are completely independent of those policy changes which will occur whether or not you accept this offer."[1]

The attached settlement and release agreement states, in relevant part, "Sales Representative . . . does hereby release, acquit and agree to a complete settlement of any and all claims . . . known and unknown . . . that Sales Representative may have against the Company . . . including a claim for failure to pay wages, for unlawful deductions, for failure to reimburse business related expenses, for unfair competition, for statutory and/or civil penalties pursuant to the California Labor Private Attorney General Act, and for wage statement deficiencies." *Id.* The settlement and release agreement contains a waiver under California Civil Code section 1542. *See* CAL. CIV. CODE § 1542 ("A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.").

Ovadia signed the release on June 20, 2011 and was paid $8,000 by Zep. less withholdings. Grossman Decl. ¶ 7; Ovadia Depo. at 136:4-22.[2] On May 7, 2012, the Superior Court denied class certification in the *Britto* action. Shortly thereafter, more than fifty former Zep employees brought this action, including Ovadia. They are asserting the same claims alleged in the *Britto* action.[3]

---

[1] Zep adopted a new reimbursement policy in July 2011.
[2] Ovadia was terminated by Zep later for taking an unexcused leave of absence—he had moved to Israel and did not disclose to Zep that he was managing his customers remotely. Ovadia Depo. at 52:14-22.
[3] Ovadia asserts that Zep previously filed a motion to enforce the settlement agreement which Judge Seeborg denied. Opp. 1. On May 9, 2013, Judge Seeborg denied Zep's request to enforce the settlement agreements signed by Ovadia and others, stating that the issue should be properly brought before the court on a motion for summary judgment. Dkt. No. 68 at 3-5. The order did not reach the merits.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial." *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id*. However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Zep seeks summary judgment of Ovadia's claims for unreimbursed business expenses, arguing that Ovadia voluntarily executed a settlement and release agreement under which he expressly released the claims he has asserted against Zep in this action. Ovadia asserts that the settlement and release agreement is void because: (i) California Labor Code section 206.5 prohibits the release of claims for wages due and unpaid to an employee; (ii) California Labor

Code section 2804 prohibits the release of claims relating to an employer's duty to indemnify employees for losses caused by the discharge of their duties; and (iii) the settlement and release agreement is procedurally and substantively unconscionable. I will address each argument in turn.

**I.   CALIFORNIA LABOR CODE § 206.5**

California law forbids an employer from requiring an employee to repay wages to the employer. CAL. LAB. CODE § 221 ("It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."). The California Labor Code defines "wages" to include sales commissions. CAL. LAB. CODE § 200; *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152, 1166 (2012). California Labor Code section 206 provides special protection for employees in the context of settlement agreements over wage disputes, and states, "in the case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled as to any balance claimed." CAL. LAB. CODE § 206. That is, an employer cannot coerce an employee to settle claims against the employer by conditioning the payment of amounts due to the employee upon execution of a settlement agreement. *See Reid v. Overland Machined Products*, 55 Cal. 2d 203, 207 (1961) ("in a dispute over wages the employer may not withhold wages concededly due to coerce settlement of the disputed balance."); *Reynov v. ADP Claims Servs. Grp., Inc.*, No. 06-2056 CW, 2007 WL 5307977, at *2-3 (N.D. Cal. Apr. 30, 2007) ("As the legislative history [] demonstrates, the purpose behind § 206.5 was to prevent 'unscrupulous employers,' particularly in the construction industry, from withholding a worker's paycheck unless he signed a release waiving all rights to additional compensation owed.").

California Labor Code Section 206.5 further makes any such release "null and void." It states:

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.

Cal. Lab. Code. § 206.5.

However, wages are not considered "due" and unreleasable under section 206.5 when a

"bona fide dispute" exists. *Watkins v. Wachovia Corp.*, 172 Cal. App. 4th 1576, 1587 (2009) ("wages are not considered 'due' and unreleasable under Labor Code section 206.5, unless they are required to be paid under Labor Code section 206. When a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment -- even if the payment is for an amount less than the total wages claimed by the employee."). In determining whether a "bona fide dispute" exists for the purposes of section 206.5, courts have adopted the standard in California Code of Regulations title 8, section 13520, which provides:

> A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

Cal. Code Regs. tit. 8, § 13520; *Reynov*, 2007 WL 5307977, at *3.

An unwaivable statutory right to wages will not preclude a finding that a bona fide dispute exists. *See Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803 (2009) ("We recognize that 'the statutory right to receive overtime pay embodied in section 1194 is unwaivable.' But there is no statute providing that an employee cannot release his claim to past overtime wages as part of a settlement of a bona fide dispute over those wages.").

As such, I need consider only whether a bona fide dispute existed when Ovadia signed the settlement and release agreement. The evidence establishes that one did. The settlement and release agreement signed by Ovadia denied the allegations in the *Britto* lawsuit. Grossman Decl., Ex. B ("the Company believes it did not violate any law"). It also stated that Zep believed its commission structure was lawful, and that it had paid all wages due to its employees. *Id*. Ovadia has not presented evidence that Zep made these statements in bad faith or believed other wages were "concededly due." Furthermore, Zep has successfully defended section 221 wage claims in arbitrations against plaintiffs who asserted the same claims and were compensated under the same commission scheme as Ovadia. *See* Suh Decl., Exs. F-J. This is enough to demonstrate that Zep's defenses are not "unsupported by any evidence," "unreasonable," or "presented in bad faith."

1  Cal. Code Regs. tit. 8, § 13520. *See FEI Enterprises, Inc. v. Kee Man Yoon*, 194 Cal. App. 4th
2  790, 805-06 (Cal. Ct. App. 2011) ("The critical question should be the legal tenability of the
3  justification for non-payment that was asserted . . . A legal dispute between two parties exists, is
4  'legitimate,' 'genuine,' 'bona fide,' or in 'good faith' where the arguments asserted or positions
5  taken have objective legal tenability. Nothing more should be required."). The settlement and
6  release agreement also contained an express waiver under California Civil Code § 1542, which is
7  legally enforceable under California Labor Code 206.5. *Reynov*, 2007 WL 5307977, at *2-3.

At oral argument, Ovadia's counsel argued that $274.13 in credit card fees deducted from Ovadia's commissions were undisputably due. *See also* Opp. 8. In support, Zep's counsel pointed to a document titled "Summary of Activity Code Adjustments" which lists several line items and monetary amounts. *See* Gutierrez Decl., Ex. Z. One of those items is described as "CCrd fee 6 ($274.13)." *Id.* However, it is not evident from this document that the fees were undisputed. At oral argument, Zep's counsel responded that whether the credit card fees were due was in fact disputed because Zep believed that the fees were properly deducted as part of Zep's profit-sharing commission arrangement. *See also* Reply at 4 ("Zep has always disputed the fact that the purported 'deductions' at issue are even deductions at all"). Zep also pointed out that in arbitrations against other plaintiffs, credit card fees were not awarded by the arbitrator. *See e.g.*, Reply at 5; Suh Decl., Exs. F, H, J.[4] Under these circumstances, and based on the facts in the record before me, there is no material issue of fact that there existed a bona fide dispute over wages allegedly owed to Ovadia. Therefore the release is enforceable. Zep's motion for summary judgment on Ovadia's wage claims is GRANTED.

**II. CALIFORNIA LABOR CODE § 2804**

The California Labor Code provides, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." CAL LAB. CODE § 2802. Necessary expenditures and losses

---

[4] Zep's counsel also asserted that even though the credit card fees were disputed, they were considered and included in the settlement offer, and their amount is minor compared to the $8,000 offered and accepted by Mr. Ovadia.

7

include "all reasonable costs." *Id*. § 2802(c). Section 2802 "is designed to prevent employers from passing their operating expenses on to their employees." *Gattuso v. Harte–Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 562 (2007). An employee's right to indemnification under section 2802 is nonwaivable. CAL. LAB. CODE § 2804 ("Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void . . . ."). Section 2802 applies to "reimbursement for business expenses." *Gattuso*, 42 Cal. 4th at 559.

Zep argues that claims under section 2802 can be voluntarily settled when there exists a "bona fide dispute," but Zep does not cite any authority for this proposition, and I am aware of no authority that applies the protections of California Labor Code 206.5, which relates to "wages due," to claims for reimbursement of business expenses under section 2802. *See Nelson v. Dollar Tree Stores, Inc.*, No. 11-cv-01334 JAM, 2011 WL 3568498, at *3 (E.D. Cal. Aug. 15, 2011) (holding that business expenses are not considered "wages" under California law) (citing *Smith v. Rae–Venter Law Group*, 29 Cal. 4th 345, 353, (2002) (stating that reimbursement of business expenses are "nonwage claims"); CAL. UNEMP. INS. CODE § 929 ("'Wages' does not include the actual amount of any required or necessary business expense incurred by an individual in connection with his employment . . . .").

Ovadia claims that section 2804 voids any agreement to waive the protections of section 2802 and cites *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008). In *Edwards*, the California Supreme Court held that general release language waiving "'any and all' claims would not encompass the right to indemnification, because we treat the [release] as expressly incorporating the law that the employee cannot waive that right." *Id*. at 955. In other words, because the waiver at issue in *Edwards* did not expressly reference indemnity rights, the parties to the agreement were presumed to incorporate applicable laws, and such a reading made the waiver valid and enforceable. *Id*.

Zep points to *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562 (Ct. App. 2010), which held that a previous court-approved class action settlement agreement properly released statutory

8

rights under California Labor Code section 2802.[5] In *Villacres*, a member of a class action that settled filed another suit two days later against the same employer, seeking penalties for alleged violations of the California Labor Code with respect to indemnifying employees for business expenses and losses, overtime compensation, providing meal and rest periods, and other claims. *Id*. at 569.   The court, discussing the section 2802 claim, stated:

> Villacres also argues that the [class action settlement] could not release . . . an employee's claim to indemnification for business expenses and losses (§§ 2800, 2802) because those claims involve unwaivable statutory rights. But defendants did not entice or force Villacres or other class members to waive future claims or, for that matter, to waive any claims without compensation. To the contrary, in [the prior class action], the parties amicably resolved past alleged violations, and defendants compensated the class members for those claims. A release of that nature is legally distinguishable from an unlawful waiver of statutory rights. Were it otherwise, a suit alleging a wage claim could be resolved only through a dispositive motion or a trial.

*Id*. at 591 (citing *Edwards*, 44 Cal. 4th at 950-952; *Chindarah*, 171 Cal. App. 4th at 801–803 (settlement of bona fide wage dispute does not violate statute prohibiting release of unwaivable wage claims) (other citations omitted). The *Villacres* court determined that *res judicata* barred the plaintiff's claims. *Id*.

*Villacres* is directly on point. Ovadia cites many cases stating that business expenses under section 2802 are nonwaivable and that a contract waiving such rights is unlawful under section 2804, but none of them involve the enforceability of a settlement agreement for past, unpaid business expenses. *See* Opp. at 15-16. Those cases do not trump *Villacres*, a relatively recent California appellate court case. Notably, the plaintiff in *Villacres* was a party to the

---

[5] Zep also heavily relies on *Waisbein v. UBS Fin. Servs. Inc.*, No. 07-2328 MMC, 2007 WL 4287334 (N.D. Cal. Dec 5, 2007), which is not on point. In *Waisbein*, a former employee opted out of class action that culminated in a court-approved class action settlement that included release of claims under sections 2802 and 2804. 2007 WL 4287334 at *1. The plaintiff later sought to bring a separate class action on his own behalf, as well as on behalf of the same plaintiffs who had executed the court-approved settlement. *Id*. The court dismissed claims brought by the plaintiff *only* to the extent that he sought to assert claims on behalf of the other plaintiffs who had executed the settlement agreement. *Id*. at *3 ("the question is whether the Bowman class members voluntarily entered into an agreement in which they accepted a monetary benefit from UBS in exchange for not pursuing their claims under PAGA. The indisputable answer to that question is 'yes.' As a result, Waisbein may not bring herein PAGA claims on behalf of the Bowman class members with respect to the time period identified in the release."). The court did not explicitly reach the issue of whether section 2804 affects the ability of the parties to settle section 2802 claims.

9

1  settlement as a class member, whereas Ovadia is a direct party; if anything, that cuts against
2  Ovadia because he had even more power to accept or reject Zep's offer. *Villacres*' analysis
3  primarily proceeds on res judicata, rather than the enforceability of the settlement agreement, but
4  the court directly addressed the argument that the past settlement agreement could not waive
5  section 2802 claims, and rejected it. Zep's motion for summary judgment regarding Ovadia's
6  claims under section 2802 is GRANTED.

### III. THE SETTLEMENT AND RELEASE AGREEMENT IS NOT UNCONSCIONABLE

Settlement agreements are governed by contract principles and are subject to all defenses available to the enforcement of a contract, including fraud, oppression, duress, statutory defenses, and unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000). Whether a contract is unconscionable is a question of law. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1663 (1993). In California, unconscionability includes an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a procedural and a substantive element. *Id*.

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. *Id*. California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Substantive unconscionability occurs where the provision at issue reallocates risks in an objectively unreasonable or unexpected manner. *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted). Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause. *Id*. at 824–25 (citation omitted). Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree. Rather, the more

10

1    substantively oppressive the contract term, the less evidence of procedural unconscionability is

2    required to come to the conclusion that the term is unenforceable, and vice versa. *Armendariz*, 24

3    Cal.4th at 114 (2000).

4        Ovadia argues that the settlement and release agreement is unconscionable because "he

5    was never fully informed of the existence of the rights being waived," it "was unilaterally drafted

6    by Zep in a take-it-or-leave-it form that did not allow any mechanism for modification or

7    negotiation," "Ovadia had no understanding as to the meaning of the Code of Civil Procedure §

8    1542 waiver," Zep's "free legal advice was faulty and deceptive," and "the Release did not include

9    a release of claims on Zep's part." Opp. 18, 22-24.

10       Ovadia's claim that he did not understand that he was waiving legal rights is contrary to

11   his deposition testimony, where he repeatedly stated that he understood that signing the settlement

12   agreement meant that was releasing any claims to commission deductions and business

13   reimbursements. Suh Decl., Ex. E at 133:2-9; 134:14-19; 137:5-10. Furthermore, the May 24,

14   2011 letter even-handedly explains the *Britto* lawsuit, attached the Britto first amended complaint,

15   and the attached settlement and release agreement states in large capital letters, next to the

16   signature block, "ATTENTION: THIS DOCUMENT CONTAINS A RELEASE AND WILL

17   AFFECT YOUR LEGAL RIGHTS." Grossman Decl., Ex. B.

18       Ovadia's claim that the settlement was presented in a "take-it-or-leave-it" fashion that

19   disallowed negotiation also fails because the May 24, 2011 letter gave Ovadia the choice of

20   accepting or rejecting the settlement, and provided 30 days to make that decision. *Id.* The letter

21   also repeatedly states that acceptance or rejection of the settlement would not impact Ovadia's

22   future employment with Zep, and Zep would not retaliate against employees who chose not to

23   accept the settlement offer. *Id.* It also provided Ovadia with contact information for counsel

24   whom he could contact to discuss the agreement before making a decision, including the contact

25   information for his current counsel. *Id.* Ovadia did not contact counsel or attempt to negotiate

26   with Zep before signing the settlement agreement. Gutierrez Decl., Ex. I at 126:1-11; 127:19-

27   128:6.

28       Ovadia is correct that the settlement and release agreement did not require release of any

claims by Zep. An agreement that does not include a mutual release of claims is one-sided in nature. *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 843 (N.D. Cal. 2012). Such a finding, however, only indicates that an agreement is somewhat procedurally unconscionable, not that it is unenforceable.

Because the dispute resolution clause is not procedurally unconscionable, and only somewhat substantively unconscionable, the agreement is valid and enforceable. Zep's motion for summary judgment is GRANTED.

## CONCLUSION

Zep's motion for summary judgment against David Ovadia is GRANTED.

**IT IS SO ORDERED**.

Dated: May 12, 2014

_____
WILLIAM H. ORRICK
United States District Judge